IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW L. ASHBY, individually and as next friend of M.A., a minor,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>MARY DYER, individually and in her official capacity; MONICA TAYLOR KILMER; DOUGLAS ERIC BLACK and TAMMY NORRIS BLACK, husband and wife; DAVID TAYLOR and MICHELLE TAYLOR, husband and wife; ESTATE OF MICHAEL WASHBURN, DECEASED; ERICKSON AND SEDERSTROM PC, a Nebraska corporation; BRYANT A. WHITMIRE; LIFETIME ADOPTION AND FACILITATION CENTER, LLC, a California corporation; and AGAPE PREGNANCY CARE CENTER, a Nebraska corporation,<br><br>　　　　　　Defendants. | 4:05CV3154<br><br>**MEMORANDUM<br>AND ORDER** |

　　　Six motions to dismiss have been filed by the defendants[1] regarding the plaintiff's second amended complaint (filing 93):

　　　1.　Filing 97, filed by Erickson & Sederstrom, P.C., and the Estate of Michael Washburn, Deceased, pursuant to Fed. R. Civ. P. 12(b)(6).

　　　2.　Filing 100, filed by Mary Dyer, in her official capacity only, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

　　　3.　Filing 102, filed by Lifetime Adoption Facilitation, LLC, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6).

---

[1] The only defendant not to file a motion to dismiss is Agape Pregnancy Care Center. Agape filed an answer to the plaintiff's original complaint, but has not responded to subsequent pleadings.

    4.       Filing 105, filed by Monica Taylor Kilmer, Douglas Eric Black, and Tammy Norris Black, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

    5.       Filing 108, filed by Bryant A. Whitmire, pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6).

    6.       Filing 111, filed by David Taylor and Michelle Taylor pursuant to Fed. R. Civ. P. 12(b)(6).

The plaintiff, Matthew Ashby (Ashby), alleges that he is the biological father of M.A., who was born on January 21, 2004, in Madison County, Nebraska. Monica Taylor Kilmer (Kilmer) is the biological mother. Ashby alleges that Kilmer's parents, David and Michelle Taylor (the Taylors), insisted before the child's birth that Kilmer place the child for adoption. For this purpose, Kilmer allegedly retained an attorney, Michael Washburn (Washburn), of the Erickson & Sederstrom law firm in Omaha, Nebraska, and also Lifetime Adoption Facilitation Center, LLC (Lifetime), and Agape Pregnancy Care Center (Agape).

Douglas and Tammy Black (the Blacks) are the prospective adoptive parents, and it is alleged that they now have physical custody of M.A. They obtained custody at the Madison County hospital on February 3, 2004, and promptly removed the child to Alabama, where they reside. Alabama attorney Bryant Whitmire (Whitmire) then commenced adoption proceedings on their behalf.[2] It appears that an interlocutory decree granting custody of M.A. to the Blacks was entered by the Probate Court of Montgomery County, Alabama, on February 17, 2004.

Ashby filed a notice of intent to claim paternity with the Nebraska Department of Health and Human Services (HHS) on January 30, 2004. Mary Dyer (Dyer) is an HHS employee who allegedly is charged with enforcing the Interstate Compact for

---

[2] Washburn is also alleged to have acted as Whitmire's agent and as local counsel for the Blacks in connection with their obtaining custody of the child in Nebraska, which included mailing and publishing notice of the proposed adoption.

the Placement of Children, giving permission for out-of-state prospective adoptive parents to remove children from Nebraska for adoption, and determining if biological parents have filed a notice of intent to claim paternity as provided by Nebraska statute. It is alleged that "Dyer gave permission to the Blacks, through their attorney Washburn, who was acting on behalf of Whitmire, to remove M.A. from the State of Nebraska, on or about January 29, 2004[.]" (Second Amended Complaint, ¶ 5.)

On April 22, 2004, in a custody action Ashby filed against Kilmer, the County Court of Madison County, Nebraska, entered an order finding that Ashby had complied with all statutory requirements in filing the notice of intent to claim paternity, that he is M.A.'s natural and biological father, and that it is in the best interest of the child that Ashby have physical and legal care, custody, and control. It appears that Ashby initiated an action in the Circuit Court of Montgomery County, Alabama, Domestic Relations Division, to enforce the custody order, and that the Blacks obtained a transfer of the adoption proceeding from the Probate Court to the Juvenile Division of the Circuit Court. The two actions were then consolidated. However, on September 22, 2005, the Juvenile Division of the Montgomery County Circuit Court declined to exercise jurisdiction and directed that the custody case be transferred to the Madison County Court for further proceedings. The Juvenile Court left it to the Probate Court to decide whether the adoption case should be stayed, held in abeyance, or dismissed without prejudice. On September 29, 2005, the Probate Court ordered the adoption case stayed pending adjudication in the Madison County Court. No action appears to have been taken in any state court since then.

The second amended complaint contains five counts: (1) a § 1983 claim that the defendants, acting under color of state law, conspired to deprive the plaintiff of due process by removing his minor child to another state for purposes of adoption; (2) a state-law claim that the defendants engaged in a civil conspiracy to interfere with the plaintiff's parental rights; (3) a state-law claim for false imprisonment of the minor child by the Blacks; (4) a state-law claim for negligence; and (5) a state-law claim for fraud, misrepresentation, and breach of fiduciary duty. Before deciding

3

whether these claims are adequately alleged, I must first consider the defendants' arguments that subject matter jurisdiction is lacking. See Sac & Fox Tribe of the Mississippi in Iowa, Election Bd. v. Bureau of Indian Affairs, 439 F.3d 832, 836 (8th Cir. 2006) ("Even in the absence of a challenge from any party, courts have an independent obligation to determine whether subject matter jurisdiction exists.").

Dyer's motion to dismiss, filed pursuant to Rule 12(b)(1) and (6), asserts that she is entitled to Eleventh Amendment immunity in her official capacity with respect to the § 1983 claim.[3] Dyer also asserts that she has not been sued in her official capacity with respect to any state-law claim. Ashby has not responded to Dyer's motion.[4] While Dyer's interpretation of the second amended complaint is not unreasonable, I am required when considering a motion to dismiss to construe the pleadings liberally in favor Ashby. See Manion v. Nagin, 394 F.3d 1062, 1065 (8th Cir.), cert. denied, 125 S.Ct. 2939, 162 L.Ed.2d 866 (2005). Because it is possible to construe the second amended complaint as alleging state-law claims against Dyer in both her individual capacity and her official capacity, and because Dyer has not asserted the immunity defense with respect to those claims, I will consider only the § 1983 claim.[5] As to that claim, there can be no question that Dyer, in her official capacity, is immune from suit for damages, which is the only form of relief that

---

[3] The Supreme Court has not decided whether Eleventh Amendment immunity is a matter of subject-matter jurisdiction. Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391 (1998) (holding that Eleventh Amendment does not automatically destroy original jurisdiction).

[4] Under our local rules, "[f]ailure to file an opposing brief shall not be considered to be a confession of the motion, but shall preclude the nonmoving party from contesting the moving party's statement of facts." NECivR 7.1(b)(1)(C).

[5] I have previously held, however, that the State of Nebraska has not waived its Eleventh Amendment immunity in the State Tort Claims Act. See Miller v. Nebraska Dept. of Correctional Services, No. 4:04CV3228, 2005 WL 3072198, *1 (D.Neb. Nov. 15, 2005); Doran By and Through Doran v. Condon, 983 F. Supp. 886, 890 (D.Neb. 1997).

4

Ashby is seeking.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 & n. 19 (8th Cir. 1999) (Eleventh Amendment immunity bars § 1983 actions against state officials in their official capacities, except for injunctive relief); Poor Bear v. Nesbitt, 300 F. Supp. 2d 904, 913-14 (D.Neb. 2004) ("It is well-settled that the State of Nebraska has not waived its immunity from liability in civil rights actions.").  Thus, the motion will be granted in part.

Lifetime, while asserting that the court has not acquired personal jurisdiction over it, also argues that the case is not ripe for adjudication because of the pending custody case in the Madison County District Court.  The same argument is advanced by Kilmer and the Blacks, and by Erickson & Sederstrom and Washburn's estate.[6]

The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration. KCCP Trust v. City of North Kansas City, 432 F.3d 897, 899 (8th Cir. 2005).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Id. (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

The defendants argue that until Ashby's custody rights have been finally decided, his action is premature.[7]  Ashby counters that his right to physical and legal

---

[6] Although Erickson & Sederstrom and Washburn's estate make a point of arguing that the ripeness doctrine is properly analyzed under Rule 12(b)(1), their motion to dismiss only cites Rule 12(b)(6).  These defendants also suggest that abstention would be appropriate.

[7] The Blacks, in particular, argue that they have a valid custody order from the Probate Court of Montgomery County, Alabama, and they argue that the custody order that Ashby obtained from the Madison County Court in Nebraska is invalid for several reasons.  They claim that the matter of custody will be resolved by further proceedings in the Madison County Court.

5

custody of M.A. was decided by the Madison County Court in April 2004, and that the custody order only remains to be enforced.[8]

The precise line between ripe actions and premature actions is not an easy one to draw. Public Water Supply Dist. No. 10 of Cass County v. City of Peculiar, 345 F.3d 570, 574 (8th Cir. 2003). On the other hand, it is a fairly simple matter to determine whether a plaintiff has stated a claim upon which relief can be granted under § 1983, which is the only possible basis for the court's exercise of original jurisdiction in this matter (under 28 U.S.C. §§ 1331 and 1343). In this regard, I agree with the defendants' further arguments that no actionable § 1983 claim has been alleged by Ashby. Because it is obvious that federal question jurisdiction does not exist in this case, there is no reason to decide the more complicated issue of whether all claims asserted are ripe for decision, or, alternatively, whether the court should abstain from deciding the claims while state court proceedings are pending. The ripeness and abstention doctrines also presuppose that the court's exercise of jurisdiction would otherwise be proper, which clearly is not the case here.

"Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005). A "meeting of the minds" to violate constitutional rights must be shown. Id., at 952 & n. 2. "A private person does not conspire with a state official merely by invoking an exercise of the state official's authority." Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002) (quoting Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir.1980)).

---

[8] Ashby argues that the custody order was not appealed, and implies that it is not open to collateral attack. He also argues that the Alabama custody order is invalid for several reasons, including that it was obtained by fraud and misrepresentation, as alleged in the second amended complaint.

6

Examining the allegations of the second amended complaint, I find that the only state actor involved in the alleged conspiracy, Dyer, is merely charged with (1) giving the Blacks permission on January 29, 2004, to remove M.A. from the State of Nebraska "without properly checking to see if the Blacks had complied with Nebraska law regarding notice to Ashby or if Ashby had been notified according to law," and (2) failing to rescind her approval after Ashby filed the notice of intent to claim paternity on January 30, 2004, "a fact which was known to Dyer, or should have been known, and communicated to Washburn and the other defendants." (Second Amended Complaint, ¶ 5.)  These are allegations of simple negligence.

Negligent, or even grossly negligent, conduct by government officials cannot be the basis of a constitutional tort claim.  Davis v. Fulton County, 90 F.3d 1346, 1352 (8th Cir. 1996).  A lack of due care by an official causing unintended injury to life, liberty or property does not implicate the due process clause.  Id., at 1353.  Even if Dyer actually knew that Ashby was claiming paternity, there is no allegation that such information was shared with the other defendants.  To the contrary, Ashby alleges that Dyer failed to communicate with the other defendants.[9]  As a matter of law, therefore, there was not a "meeting of minds" between Dyer and the other defendants to violate Ashby's constitutional rights.[10]

Although Ashby also alleges that Lifetime and Agape were state actors, these are merely conclusory allegations of law.[11]  Only well-pleaded facts are viewed to

---

[9] Consistent with this allegation, Ashby also alleges that the Blacks removed M.A. from the State of Nebraska "notwithstanding that they knew, or in the exercise of reasonable care should have known, that Ashby complied with Nebraska law by filing the required notice[.]" (Second Amended Complaint, ¶ 1I (emphasis supplied.))

[10] I do not decide whether Ashby has adequately alleged the violation of a constitutional right.

[11] Although Ashby has not specifically alleged that Washburn and Whitmire were "acting under color of state law" as licensed attorneys, to the extent that such

7

determine the adequacy of a complaint. See Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002). The only facts about Lifetime that are alleged in the second amended complaint are that it "is a California corporation engaged in the business of an adoption agency and was doing business in the State of Nebraska, although not licensed to do so[.]" (Second Amended Complaint, ¶ 1F.) Agape is only alleged to be "a Nebraska corporation engaged in the business of pregnancy care . . . [that] was doing business in the State of Nebraska[.]" (Id., ¶ 1J.) Ashby argues that Lifetime's and Agape's actions are fairly attributable to the State of Nebraska, but the second amended complaint contains no allegations whatsoever concerning any actions that were taken by Lifetime or Agape; it is merely alleged that they were retained by Kilmer.

In summary, regardless of whether Ashby's claims are ripe for determination, it is clear that count one of the second amended complaint must be dismissed for failure to state a claim upon which relief can be granted. Although the defendants suggest that the court should decline to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3), that section only applies when "the district court has dismissed all claims over which it has original jurisdiction." In this case, original jurisdiction was never acquired because no actionable federal claim was pleaded in any version of the complaint.[12] Thus, dismissal of the state-law claims is not discretionary, but, rather, mandatory. See Avitts v. Amoco Prod. Co.,

---

an inference might be drawn from the pleadings, he has conceded that they were private actors by stating that he is "not contesting Defendant E&S and Washburns' arguments regarding 28 U.S.C. § 1983." (Filing 137, at 3, n.1.) (Ashby failed to respond to Whitmire's brief, which contained similar arguments.)

[12] Ashby's original complaint (filing 1) did not differ significantly from the second amended complaint regarding the § 1983 claim. The first amended complaint (filing 30) included a request for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241, but I ruled that subject matter jurisdiction was lacking. See United States ex rel. Mueller v. Missouri Div. of Family Services, 123 F.3d 1021, 1023 (8th Cir. 1997) (in general, federal courts have no jurisdiction to determine child custody).

53 F.3d 690, 693 (5th Cir.1995) (§ 1367(c)(3) did not apply where the district court never had original jurisdiction). Even if I had discretionary authority to retain the state-law claims, I would not do so.[13] Although the case has been pending in this court for some time, it has not progressed beyond the pleading stage, and I can find no good reason why the state-law claims should not be determined by a state court.

Accordingly,

IT IS ORDERED that:

1. Filing 100 is granted in part and denied in part, as follows:
    a. Count one of the plaintiff's second amended complaint (§ 1983 claim) is dismissed with prejudice as against the defendant Mary Dyer, in her official capacity, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), based on Eleventh Amendment immunity.
    b. In all other respects, this motion to dismiss is denied without prejudice.

2. Filings 97, 102, 105, 108, and 111 are granted in part and denied in part, as follows:
    a. Count one of the plaintiff's second amended complaint (§ 1983 claim) is dismissed with prejudice as against the defendants

---

[13] The decision whether to exercise supplemental jurisdiction over state-law claims when federal claims have been dismissed depends upon "factors such as convenience, fairness, and comity." Green v. Ameritrade, Inc., 120 F. Supp. 2d 795, 800 (D.Neb. 2000) (quoting Hansen v. Sioux By-Products, 988 F. Supp. 1255, 1264 (N.D. Ia. 1997). Judicial economy is also a factor to consider, and the Supreme Court has stated that federal courts usually should decline to exercise supplemental jurisdiction "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

9

        Erickson & Sederstrom, P.C., the Estate of Michael Washburn, Deceased, Lifetime Adoption Facilitation, LLC, Monica Taylor Kilmer, Douglas Eric Black, Tammy Norris Black, Bryant A. Whitmire, David Taylor, and Michelle Taylor pursuant to Fed. R. Civ. P. 12(b)(6).

    b.    In all other respects, these motions to dismiss are denied without prejudice.

3.    On the court's own motion, the plaintiff's action is dismissed without prejudice, in its entirety and as against all defendants, for lack of subject matter jurisdiction.

4.    Judgment shall be entered by separate document.

April 14, 2006.        BY THE COURT:

                                          s/ *Richard G. Kopf*
                                          United States District Judge