IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW L. ASHBY, individually and as next friend of M.A., a minor,<br><br>     Plaintiff,<br> vs.<br><br>MARY DYER, individually and in her official capacity; MONICA TAYLOR KILMER; DOUGLAS ERIC BLACK and TAMMY NORRIS BLACK, husband and wife; DAVID TAYLOR and MICHELLE TAYLOR, husband and wife; ESTATE OF MICHAEL WASHBURN, DECEASED; ERICKSON AND SEDERSTROM PC, a Nebraska corporation; BRYANT A. WHITMIRE; LIFETIME ADOPTION AND FACILITATION CENTER, LLC, a California corporation; and AGAPE PREGNANCY CARE CENTER, a Nebraska corporation,<br><br>     Defendants. | 4:05CV3154<br><br>**MEMORANDUM AND ORDER** |

  In a final judgment entered on April 14, 2006, the plaintiff's action was dismissed without prejudice for lack of subject matter jurisdiction, except that count one of the plaintiff's second amended complaint was dismissed with prejudice as against ten defendants (Mary Dyer, in her official capacity; Erickson & Sederstrom, P.C.; the Estate of Michael Washburn, Deceased; Lifetime Adoption Facilitation, LLC; Monica Taylor Kilmer; Douglas Eric Black; Tammy Norris Black; Bryant A. Whitmire; David Taylor; and Michelle Taylor).[1] On April 27, 2006, the plaintiff filed

---

  [1] The defendant Agape Pregnancy Care Center did not file a motion to dismiss, and the defendant Mary Dyer only filed a motion to dismiss an official-capacity claim

a motion pursuant to Federal Rules of Civil Procedure 15(a) and 59(e), requesting leave to file a third amended complaint, or, alternatively, requesting amendment of the judgment to provide that count one of the second amendment complaint is dismissed without prejudice.[2]  The motion will be denied.

Essentially, the plaintiff (Ashby) contends that he learned new information, or at least was able to obtain certain concessions, when he deposed one of the defendants, Mary Dyer, in a related state court action on April 17, 2006, and, as a result, that he is now in a position to allege an actionable § 1983 claim against all defendants.  Comparing the proposed third amended complaint (filing 154-2) to the second amended complaint (filing 93-1), I note the following additions and deletions:

ALLEGATIONS APPLICABLE TO ALL COUNTS

1.  PARTIES:

* * *

B) Defendant Mary Dyer (Dyer) is a resident of Nebraska and at all times was an employee of the State of Nebraska, and is made a party in her official and individual capacities and was at all times acting under color of state law and had an equitable and fiduciary duty to plaintiffs. <u>Defendant Dyer has been, at all times relevant, the singular employee of the State of Nebraska charged with approving interstate adoptions and granting permission for children to leave Nebraska in order that they can be adopted in other states.</u>

---

(based on Eleventh Amendment immunity).  However, my dismissal of the action for lack of subject matter jurisdiction was based upon a finding that count one of the second amended complaint failed to state an actionable claim for relief against any defendant under 42 U.S.C. § 1983.

[2] In addition to filing opposing briefs, the defendants have filed objections to the plaintiff's motion.  Such filings are not permitted by our local rules, <u>see</u> NECivR 7.1(b)(1)(A), and will be ordered stricken.

2

C) Defendant Monica Taylor Kilmer (Kilmer) is a resident of Lancaster County, Nebraska and is the biological mother of M.A. and, at all times relevant, had an equitable and fiduciary duty to plaintiffs <u>and was acting under color of state law</u>.

D) Defendants Douglas Eric Black and Tammy Norris Black (Blacks) are husband and wife and residents of the State of Alabama and currently have physical custody of M.A., having personally removed him in violation of law from the State of Nebraska on or about February 3, 2004 and, at all times relevant, had an equitable and fiduciary duty to plaintiffs <u>and was [sic] acting under color of state law</u>.

\* \* \*

G) Defendant Estate of Michael Washburn, Deceased (Washburn) represents Michael Washburn, who was a lawyer licensed to practice law in the State of Nebraska, and was at all times representing Kilmer and the Blacks, both as a lawyer and agent. Washburn was a partner or shareholder in the law firm of Erickson and Sederstrom P.C. in Omaha, Nebraska, and was at all times acting within the scope and course of his employment with said firm <u>and under color of state law</u>.  Washburn was also acting as agent and co-counsel and local counsel with Bryant A. Whitmire, an Alabama lawyer and had an equitable and fiduciary duty to plaintiffs.

\* \* \*

I) Defendant Bryant A. Whitmire (Whitmire) is a lawyer, a resident of Alabama licensed to practice law in the State of Alabama, and was at all times representing Kilmer and the Blacks, both as a lawyer and agent, and had an equitable and fiduciary duty to plaintiffs <u>and was acting under color of state law</u>.  Whitmire was also using Washburn as his agent and co-counsel in the state of Nebraska for purposes of securing possession of M.A. and representing the Blacks and Kilmer, and all conduct of Washburn is imputed to Whitmire.

J) ~~Defendant Agape Pregnancy Care Center (Agape-NE) is a Nebraska corporation engaged in the business of pregnancy care and~~

3

~~was doing business in the State of Nebraska, and was at all times acting under color of state law and had an equitable and fiduciary duty to plaintiffs.~~

\* \* \*

3.  FACTS RELATING TO ALL COUNTS

\* \* \*

    C)    Pursuant to Nebraska law, Washburn, on behalf of Kilmer, attempted to give written notice to Ashby, by letter dated January 8, 2004, copy attached as Exhibit A, of the impending birth of M.A., and the intention of Kilmer to place the child for adoption with the Blacks. This letter failed to comply with Nebraska law <u>insofar as it was not sent to Ashby's commonly known address via certified mail</u>. Ashby did not receive the letter until on or about January ~~28~~ <u>29</u>, 2004 <u>and he registered with the State the next day</u>. <u>In a letter of January 27, 2004, Washburn intentionally misrepresented to Dyer that he had provided notice to Ashby via certified mail as is required by Nebraska law. Washburn and Whitmire knew that Dyer would rely on their representations when evaluating whether the ICPC packet complied with Nebraska law.</u>

\* \* \*

    E)    Although Ashby did not receive the letter, Exhibit A, until January ~~28~~ <u>29</u>, 2004, by regular mail, not registered as provided by law, the newspaper notice was brought to his attention and pursuant to Nebraska law he filed a Notice of Intent to Claim Paternity with the State of Nebraska, on January 30, 2004. Thereafter, on February 20, 2004 he filed a Petition for Custody in the County Court of Madison County, Nebraska. Copy of the Notice of Intent to Claim Paternity is attached as Exhibit C. Ashby fully complied with Nebraska law.

    F)    At all times relevant, the Blacks, Kilmer, Washburn, Whitmire, Dyer, <u>and</u> Lifetime ~~and Agape NE,~~ knew, or in the exercise of reasonable care should have known, that Ashby desired custody of his son, and knew, or in the exercise of reasonable care, should have known

4

that Ashby had filed a Notice of Intent to Claim Paternity with the State of Nebraska, within the statutory time limit, on January 30, 2004. <u>Defendants mutually understood that plaintiff intended to withhold consent for any adoption and that plaintiff desired custody of his son.</u> Notwithstanding that knowledge, the defendants misrepresented to the hospital where M.A. was born that the Blacks had a legal right to remove the child, and the hospital gave the child to the Blacks, who removed him from the State of Nebraska and took him to the State of Alabama. Plaintiff was never notified of this action.

      G)    <u>On January 28th, 2004, Dyer received an ICPC packet from Defendant Washburn. Based, in part, on this packet, Dyer was aware that Ashby intended to withhold consent for any adoption and that Ashby had until February 12th, 2004 to file a Notice of Intent to Claim Paternity and Obtain Custody. Defendant Dyer knew that Ashby was entitled to full notice of any effort to place his son up for adoption and an opportunity to respond. In her official capacity as ICPC administrator for the State of Nebraska, Defendant Dyer was, and still is, entrusted with the obligation to ensure that all ICPC packets complied with Nebraska law. Defendant Dyer knew that the ICPC packet for infant Ashby did not comply with Nebraska law as there was no proof of notice to Ashby. Notwithstanding the fact that defendants knew that Ashby still had additional time to file his formal notice and intended to withhold consent, Dyer gave permission to the Defendants Black, Washburn and Whitmire for Defendants Black to leave Nebraska with Ashby's son. While the final decision to permit the Blacks to leave Nebraska with the infant Ashby was Dyer's, that decision was made pursuant to a longstanding rule, regulation or custom of the State of Nebraska to permit ICPC "at-risk" placements even though a putative father still has the opportunity to exercise his constitutional parental rights in full compliance with Nebraska law.</u> All defendants were at all times aware that Ashby desired custody of M.A., and it was public record that he had complied with Nebraska custody laws by filing a Notice on January 30, 2004.

      \* \* \*

5

## COUNT ONE
## FEDERAL CIVIL RIGHTS VIOLATION

* * *

5.  Dyer, in her capacity as an employee in the Nebraska Department of Heath and Human Services, was charged with enforcing the Interstate Compact for the Placement of Children rules regarding adoptions and with giving permission for out-of-state prospective adoptive parents to remove children from Nebraska for adoption, and with determining if biological parents had complied with Nebraska law with respect to filing a statutory Notice of Intent to Claim Paternity. While acting in that capacity, Dyer gave permission to the Blacks, through their attorney Washburn, who was also acting on behalf of Whitmire, to remove M.A. from the State of Nebraska, on or about January 29, 2004~~, without properly checking to see if the Blacks had complied with Nebraska law regarding notice to Ashby or if Ashby had been notified according to law~~.  <u>Dyer knew that Ashby had not consented to any adoption, would withhold consent, there was no proof that he had ever been served with notice pursuant to Nebraska law, and Ashby had additional days to timely file notice of intent to claim paternity.</u>  Ashby complied with Nebraska's legal notice requirements on January 30, 2004, a fact which was known to Dyer, or should have been known, and communicated to Washburn and the other defendants. Despite that fact, Dyer unlawfully failed to rescind her prior order, allowing the Blacks to leave Nebraska with M.A.  <u>At the time Dyer granted permission for the Blacks to remove M.A. from the State of Nebraska, all Defendants knew that Ashby had not received notice pursuant to Nebraska law, that he intended to withhold his consent for any adoption, and that he had additional time under Nebraska law to file notice of intent to claim paternity.  Dyer and Defendants Washburn, Whitmire, Lifetime, Kilmer and the Blacks acted in willful disregard of Ashby's constitutional rights.  Dyer's decision to permit an "at-risk placement," while optional, was made pursuant to a longstanding Nebraska custom, rule, or regulation that permits children to be taken from Nebraska, even though a putative father still has the legal ability to exercise his constitutional parental rights.</u>

* * *

Wherefore, Ashby and M.A. pray for damages against defendants and each of them in the amount of $5,000,000.00 in compensatory damages, and $10,000,000.00 punitive damages, and interest, costs, and a reasonable attorneys fee, and for other, further and different relief as may be just and equitable<u>, including injunctive relief preventing the State of Nebraska from utilizing the "at-risk" placement procedure and to require the State of Nebraska to adopt such rules that provide putative fathers proper notice and a full opportunity to be heard before a child is permitted to be taken from Nebraska by anyone for purpose of adoption in another state</u>.

"After a complaint is dismissed, the right to amend under Fed. R. Civ. P. 15(a) terminates." <u>Dorn v. State Bank of Stella</u>, 767 F.2d 442, 443 (8th Cir. 1985). "A complaint cannot be amended after dismissal unless the court first re-opens the judgment under Rule 59 or 60, and then determines that amendment is warranted." <u>In re General Motors Corp. Anti-Lock Brake Products Liability Litigation</u>, 174 F.R.D. 444, 446 (E.D. Mo. 1997), <u>aff'd sub nom.</u>, <u>Briehl v. General Motors Corp.</u>, 172 F.3d 623 (8th Cir. 1999). In the present case, the plaintiff's motion was filed within the 10-day period allowed by Rule 59(e).

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" <u>United States v. Metropolitan St. Louis Sewer Dist.</u>, 440 F.3d 930, 933 (8th Cir. 2006) (quoting <u>Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills</u>, 141 F.3d 1284, 1286 (8th Cir. 1998). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." <u>Id.</u>

Although judgment was entered on count one of the second amended complaint pursuant to Rule 12(b)(6), without consideration of any matters outside the pleading, Ashby argues that the judgment should be set aside because of newly discovered

7

evidence, the general substance of which is alleged in the proposed third amended complaint. To prevail on a Rule 59(e) motion, however, the movant must show that he exercised due diligence to discover the evidence. See Metropolitan St. Louis Sewer Dist., 440 F.3d at 933.

Ashby has not attempted to make a due diligence showing, but it appears from the court file that he was not permitted to conduct any discovery in this matter until at least November 9, 2005, when, according to the parties' Rule 26(f) planning conference report,[3] it was "agreed that written discovery and depositions [could] proceed to address the limited issue of jurisdiction." (Filing 96, at 2.) That same document specified that "[p]ersonal and subject matter jurisdiction are disputed by Bryant Whitmire, Erickson & Sederstrom, P.C., Lifetime Adoption Facilitation, Inc., Douglas Black, and Monica Kilmer." (Id.) The document does not list Dyer's official-capacity Eleventh Amendment immunity claim as a jurisdictional issue,[4] but that claim was not raised until November 22, 2005, when her motion to dismiss (filing 100) was filed.[5] Magistrate Judge Thalken adopted the parties' discovery agreement in a scheduling order entered on November 30, 2005, which provided, among other things, that "discovery addressed to the issue of jurisdiction" could be

---

[3] Generally, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). Although this action was commenced on June 30, 2005, the Rule 26(f) planning conference report was not filed until November 14, 2005, because Ashby was granted enlargements of time for the purpose of opening an estate for Michael Washburn, deceased, obtaining the appointment of a special administrator, and completing service of process. (See filings 75, 76, 77, 78.)

[4] As noted in my previous memorandum and order, the Supreme Court has not decided whether Eleventh Amendment immunity goes to subject matter jurisdiction. See Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391 (1998) (holding that Eleventh Amendment does not automatically destroy original jurisdiction).

[5] Dyer answered Ashby's first amended complaint on August 25, 2005 (filing 50) without claiming Eleventh Amendment immunity.

8

conducted until January 13, 2006, and that Ashby would then have until January 31, 2006, to respond to the defendants' motions to dismiss. (Filing 117.) Ashby never filed a response to Dyer's motion to dismiss, nor does it appear that he ever served Dyer with written interrogatories, requests for admission, or requests for production of documents, or that he ever noticed her for a deposition in this case.

It is questionable whether Judge Thalken's order permitting discovery "[a]s requested in the report of the parties' planning conference" (id.) would have allowed Ashby to depose Dyer and question her about the circumstances under which she approved the "at-risk" out-of-state placement of the newborn child (M.A.) with the Blacks, but any limitation that was placed on such discovery was self-imposed. The court's normal procedure is to permit a full range of discovery once the parties have conducted their Rule 26(f) conference.

In any event, I am not persuaded that Dyer's deposition testimony given in connection with the state-court proceeding constitutes "newly discovered evidence." Ashby basically argues that he believed prior to the deposition that Dyer had acted "without properly checking" whether all legal requirements were satisfied (as alleged in the second amended complaint), and that he first learned at the deposition that she instead had acted "pursuant to a longstanding rule, regulation or custom of the State of Nebraska" to permit "at-risk" placements of infants (as alleged in the proposed third amended complaint). The court file in the present case, however, contains a copy of an affidavit prepared by Dyer, dated June 16, 2004, that was filed in the Circuit Court of Montgomery County, Alabama, Juvenile Division. The document was filed in the present case by Ashby on August 24, 2005, as evidence in support of an unsuccessful petition for writ of habeas corpus. In the affidavit, Dyer states:

> At the time permission was granted for the Blacks to take Baby Boy Taylor [M.A.] to Alabama, the child's natural father, Matthew Ashby, had not yet registered with Nebraska Department of Health and Human Services Finance and Support. Based upon this fact, the Blacks were required to sign and execute an "At Risk Placement", which

9

> provided that in the event the birth father would come forward, or assert his interest in the subject child, even after the time of placement, the State of Alabama may require the potential adoptive parents to return the child to the State of Nebraska for further determination on the rights of the putative father. Attached hereto, marked Exhibit "D", and incorporated herein by reference is a true, complete, and accurate photocopy of said "At Risk Placement".[6] At the time permission was granted to the Blacks to take Baby Boy Taylor to Alabama, Mr. Ashby's time to register and claim paternity and custody of his son had not yet expired.

(Filing 47-9, ¶ 3.) Because this is precisely the claim that Ashby is now alleging in the proposed third amended complaint, his argument that Dyer's deposition "greatly changed the contours of this case" (filing 153, at 11) is, at best, hyperbole.

Ashby also argues that Dyer, in her deposition, "conceded that she had actual knowledge that Plaintiff intended to refuse consent to any adoption of his son and that she had no proof that he was ever served with notice pursuant to Nebraska law." (Filing 153, at 2.) These concessions were based upon Dyer's receipt of an "ICPC packet" that attorney Michael Washburn sent on January 27, 2004. (Id., at 7.) The packet contained a "birth mother questionnaire" in which Monica Taylor (Kilmer) checked the "No" box to the question, "Is [Ashby] willing to agree to the adoption, and to sign the necessary legal papers?" (Dyer deposition (filing 154), 40:8-42:6.) The packet did not include a return receipt for the notice that purportedly was mailed to Ashby, and the cover letter from Washburn stated that there had been "no reply to date" to the notice. (Id., 31:23-40:7.) Again, however, the court file in the present case establishes that Ashby possessed this information long before he deposed Dyer. On October 20, 2005, Ashby filed a copy of the "birth mother questionnaire" as an exhibit in opposition to defendant Whitmire's motion to dismiss the first amended complaint, and, on January 31, 2006, he filed a copy of Washburn's cover letter as

---

[6] A copy of the "At Risk Placement" is also contained in the court file. (See filing 47-9, at 7.)

10

an exhibit in opposition to defendant Lifetime Adoption's motion to dismiss the second amended complaint. (Filing 87-2; filing 136-16 (refiled on March 2, 2006, as filing 149-16).) Ashby did not need Dyer's "concession" that she had reviewed this information in order to make the allegations contained in the proposed third amended complaint. See Fed. R. Civ. P. 11(b)(3) (a pleader represents to the court that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]").

I do not decide whether the proposed third amended complaint states a viable § 1983 claim for procedural and substantive due process violations allegedly committed by Dyer in her individual and official capacities.[7] I merely hold that Ashby has not shown that he was unable to make the new allegations prior to entry of judgment, or that it was "manifest error" either to dismiss Dyer's official-capacity claim in the second amended complaint, based on Eleventh Amendment immunity, or to find that the second amended complaint failed to allege a constitutional tort claim against Dyer in her individual capacity,[8] thus resulting in the dismissal of the action for lack of subject matter jurisdiction.

With respect to the other defendants, I also found, based on the allegations of the second amended complaint, that they were not "state actors" and had not

---

[7] Thus, I do not address the State's argument that Ashby lacks standing to enjoin future "at-risk" placements, nor do I address the argument made by Kilmer and the Blacks that Ashby's "putative father" status does not give rise to a protected liberty interest.

[8] Ashby failed to allege that Dyer "acted with the requisite culpability" to violate his constitutional rights. See Hart v. City of Little Rock, 432 F.3d 801, 804 (8th Cir. 2005).

conspired with Dyer to violate Ashby's constitutional rights.  Ashby argues that these additional pleading defects are also corrected by the proposed third amended complaint, but I disagree with this assessment.  Conclusory allegations that each defendant was "acting under color of state law" are insufficient.  See Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006) (conclusory allegations that hospitals acted under color of state law failed to state a § 1983 claim).  The new allegation that the defendants "mutually understood that plaintiff intended to withhold consent for any adoption and that plaintiff desired custody of his son" does not establish that there was a "meeting of the minds" to violate Ashby's rights, in other words, that the defendants "willfully participated with [Dyer] and reached a mutual understanding concerning the unlawful objective of [the] conspiracy."  Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005).  Indeed, Ashby still alleges in the proposed third amended complaint that Dyer failed to inform the other defendants that Ashby had actually filed a notice of intent to claim paternity on January 30, 2004.  He also now alleges that Whitmire and Washburn intentionally misrepresented to Dyer that notice had been given to Ashby by certified mail, which is completely inconsistent with a conspiracy theory.

     Denial of a motion to amend on the ground that the proposed pleading would be futile is not an abuse of discretion, particularly where the motion is filed after the district court's final ruling.  See In re Charter Communications, Inc., Securities Litigation, 443 F.3d 987, 993 (8th Cir. 2006).  I also find no legitimate basis to grant Ashby's alternative request that the judgment be amended to provide that the § 1983 claim is dismissed without prejudice, in order to permit him "the opportunity to bring this claim against these defendants in state court." (Filing 152, at 6.)  The only reason the state-law claims were dismissed without prejudice is that the second amended complaint failed to state an actionable § 1983 claim, for reasons previously discussed, and the court therefore lacked subject matter jurisdiction.  My ruling on the § 1983 claim (count one) has not been shown to be erroneous.  In fact, Ashby even concedes that his "allegations in Paragraph 5 of the Second Amended Complaint suggested nothing more than negligence[.]" (Filing 153, at 10-11.)

12

Accordingly,

IT IS ORDERED that:

1. Plaintiff's motion for leave to file a third amended complaint or to amend judgment (filing 152) is denied.

2. Plaintiff's request for oral argument (filing 152) is denied.

3. Defendant's objections (filings 155, 157, 159, 160, 162) are stricken.


June 30, 2006.                    BY THE COURT:

                                  s/ *Richard G. Kopf*
                                  United States District Judge